UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CUSTOM CLASSIC AUTOMOBILES &
COLLISION REPAIR, INC.,

       Plaintiff,

    v.

AXALTA COATING SYSTEMS, LLC,
STANDOX NORTH AMERICA INC., and
LINDA WILLIAMS,

       Defendants.

No. 20 CV 5079

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Axalta Coating Systems, LLC, makes coating and refinishing products for vehicles. Together with its employee, Linda Williams, Axalta promised to pay Custom Classic Automobiles & Collision Repair, Inc. for transporting and repairing a car with a defective paint job. But they failed to pay. Custom Classic sued them in state court, alleging breach of contract, breach of express warranty, fraud, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. Axalta removed the case to federal court and moved to transfer or dismiss the case. Custom Classic moved to remand. For the reasons set forth below, the motion to remand and motion to transfer are denied, and the motion to dismiss is granted in part, denied in part.

## I.  Legal Standard

A defendant can remove a lawsuit filed in state court to federal court if the federal court has original jurisdiction over the dispute. 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over civil actions where the amount in

controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C.
§ 1332(a). Under the fraudulent joinder doctrine, a district court may dismiss non-
diverse defendants if the plaintiff has no chance of success against them and retain
jurisdiction over a case. *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013). To remove
a case based on fraudulent joinder, a defendant has the "heavy" burden of proving
that, after the court resolves all issues of law and fact in the plaintiff's favor, there is
no possibility that the plaintiff can establish a cause of action against the non-diverse
defendant in state court. *Id.*[1]; *see also Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911
(7th Cir. 1993) (courts should interpret the removal statute, 28 U.S.C. § 1441,
narrowly and resolve doubts in favor of the states). The court must examine the
allegations in the plaintiff's complaint at the time of removal. *See In re Burlington
Northern Santa Fe Ry. Co.*, 606 F.3d 379, 380–81 (7th Cir. 2010). If the non-diverse
defendant is not dismissed, the federal court does not have jurisdiction and must
remand the case back to state court. *See Morris*, 718 F.3d at 666.

A district court may transfer a civil action to another district or division "[f]or
the convenience of parties and witnesses, in the interest of justice." 28 U.S.C.
§ 1404(a). A district court has broad discretion to assess all the relevant factors, like
distance to the forum and judicial economy, on a case by case basis. *See Research
Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 977–78 (7th Cir.

---

[1] "Some courts, including district courts within this circuit, have suggested that the burden
is even more favorable to the plaintiff than the standard that applies to a motion to dismiss
under Federal Rule of Civil Procedure 12(b)(6)." *Schur v. L.A. Weight Loss Centers, Inc.*, 577
F.3d 752, 764 (7th Cir. 2009).

2010). I assume the truth of the allegations in the plaintiff's complaint unless contradicted by the defendant's affidavits and may consider supplemental evidentiary materials and additional facts set forth in the briefs. *See Deb v. SIRVA, Inc.*, 832 F.3d 800, 808–09 (7th Cir. 2016) (Unlike Federal Rule of Civil Procedure 12(b)(6), "Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its decision.").

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain a short and plain statement that plausibly suggests the violation of a legal right. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). I accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *Iqbal* at 678–79. I do not accept allegations that are unsupported, conclusory, or legal conclusions. *Id.* I may consider documents attached to the complaint and documents that are referenced in and central to its claims. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

## II.  Facts

Axalta Coating Systems, LLC, filed a lawsuit in the Eastern District of Pennsylvania alleging that Custom Classic Automobiles & Collision Repair, Inc. breached an exclusive requirements contract when it switched to a competitor's paint

product. [7-1] at 3, 10–18; [7-3] at 2.² Among its "miscellaneous" terms, the contract stated:

> The Master Agreement and each Incentive Agreement shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania without regard to its conflict of laws rules that would require the application of the laws of any other jurisdiction. Each party consents and submits to the exclusive jurisdiction of, and service of process by, the United States District Court for the Eastern District of Pennsylvania and the state courts of Pennsylvania.

[7-1] at 12. Custom Classic made an offer of judgment, which Axalta accepted. [7-3] at 2. Three days later, Custom Classic filed this lawsuit in Illinois state court against Axalta, Standox North America, Inc., and Linda Williams. [1-1] at 3.

According to the complaint, Custom Classic used Standox paint on a 1970 Chevrolet Camaro. [1-1] at 6, ¶ 8. Standox provided a lifetime warranty for the paintwork. [1-1] at 6, ¶ 8. Under the warranty, a Standox technician needed to inspect any defect, and the Standox-authorized body shop that performed the original work had to repair it. [1-1] at 6, ¶ 8. If the consumer had moved away, the vehicle could be taken to any Standox-authorized body shop. [1-1] at 7, ¶ 8. The body shop would contact Standox to settle the car owner's claim. [1-1] at 7, ¶ 8.

Years after the paint job, the paint on the Camaro blistered and peeled. [1-1] at 7, ¶¶ 9–10. Custom Classic called Williams, its longtime representative for automobile paint products, about the defect. [1-1] at 6–7, ¶¶ 4, 10. Williams worked

---

² Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of documents.

for Axalta, which owns Standox. [1-1] at 7, ¶ 10.[3] Because the car had moved from Illinois to Florida, an Axalta representative in Florida inspected the car, obtained samples from the defective product, and found that every panel had blistering except one door. [1-1] at 7, ¶ 11. The representative asked Williams for instructions about how to proceed. [1-1] at 7, ¶ 11. An Axalta representative told Custom Classic's customer to take the Camaro to a repair shop in Florida pursuant to the warranty. [1-1] at 7, ¶ 12. After the customer could not find an authorized body shop, an Axalta representative told the customer and Custom Classic to transport the car to Custom Classic's shop in Illinois for repair. [1-1] at 7, ¶ 13. Williams met with Custom Classic's owner in Illinois and said that Axalta would compensate Custom Classic for repairing the defect, saying that Axalta would "take care" of the situation. [1-1] at 8, ¶ 14. Custom Classic transported the Camaro to its body shop in Illinois and began repairs. [1-1] at 8, ¶¶ 15–16. An Axalta representative visited to obtain more samples of the defective product. [1-1] at 8, ¶ 16. Custom Classic reconfirmed with its customer the representations made by Williams and Axalta that they "are paying to skim coat the whole body, prep, prime, prep, and paint" the Camaro. [1-1] at 8, ¶ 17. An Axalta representative also said Axalta would pay the cost of transportation. [1-1]

---

[3] The complaint does not allege the exact relationship between Axalta and Standox. Axalta's removal notice states Standox ceased to exist as a corporate entity in 2003. [1] ¶ 11. The briefs and supplemental exhibits (undisputed by the parties) indicate that Standox merged into DuPont Performance Coatings, which was renamed Axalta Coating Systems. [6] at 8, n.1; [16] at 4, n.1; [17-1]; [17-2] at 5. In a recent SEC filing, Axalta stated it has a "large color library and several well-known, long-standing premium brands, including … Standox." Axalta Coating Systems Ltd., Annual Report (Form 10-K) (Feb. 19, 2020); *see Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) (judicial notice of SEC filings may be appropriate when the fact in question is undisputed). The Clerk is directed to terminate Standox North America, Inc. as a party to the case.

at 8, ¶ 13. Custom Classic alleges that Williams and Axalta made the same or similar promises about repairing defective Standox products on other automobiles in the past and had compensated Custom Classic for these repairs. [1-1] at 11, ¶ 35.

Custom Classic spent $45,445.77 transporting and repairing the Camaro. [1-1] at 8, ¶¶ 15–16, 18–19. After Custom Classic sent the invoice to an Axalta representative, Axalta and Williams refused to pay. [1-1] at 9, ¶ 20. Axalta first claimed that Williams's statements about compensation may have been unauthorized. [1-1] at 9, ¶ 21. Axalta then claimed Williams's representations were untrue and that the company never agreed to compensate Custom Classic for the repair work. [1-1] at 9, ¶ 22.

Custom Classic filed this lawsuit in state court for breach of contract, breach of express warranty, fraudulent misrepresentation, and violating the Illinois Consumer Fraud and Deceptive Business Practices Act. [1-1] at 9–13. Axalta removed the case to federal court. [1]. Axalta's sole member is Axalta Coating Systems U.S. Holdings, Inc., which is a citizen of Delaware and Pennsylvania. [1-1] at 5, ¶ 2; [1] ¶ 10. Williams is a resident of Illinois. [1-1] at 6, ¶ 4; [1] ¶ 12.[4] Custom Classic is a citizen of Illinois. [1-1] at 6, ¶ 5; [1] ¶ 9. Axalta then filed a motion to transfer or dismiss the complaint, [5], and Williams filed a motion to join. [14]. Custom Classic filed a motion to remand. [15].

---

[4] Domicile, not residence, determines an individual's citizenship for purposes of jurisdiction. *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014). Because the failure to properly allege Williams's citizenship would defeat jurisdiction, Axalta's fraudulent-joinder argument is amenable to resolution even though Williams's domicile is not alleged.

6

### III.    Analysis

Axalta argues that its motion to transfer should be resolved first. However, it is not in the interest of convenience, fairness, or judicial economy to transfer a case that should not be in federal court. *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (there is no mandatory sequencing of non-merits issues). I address removal first.

### A.    Removal and Motion to Remand

Williams is not alleged to be a citizen of a different state than Custom Classic, but her citizenship can be disregarded (and removal was proper) if there is no reasonable possibility that Custom Classic could prevail against her in state court. *See Morris*, 718 F.3d at 666. The analysis is limited to the allegations in the complaint filed in state court. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992) (analyzing fraudulent joinder based on the allegations in the original complaint, irrespective of whether the defects were curable).

Under Illinois law, an agent cannot be liable to a third party, even when the agent exceeds her actual authority, if the agent had apparent authority from the principal to enter into a contract. *See Joe & Dan Intern. Corp. v. U.S. Fidelity & Guar. Co.*, 178 Ill.App.3d 741, 747 (1st Dist. 1988) (describing principles of agency law when the principal is fully or partially disclosed); *see also Evanston Ins. Co. v. Riseborough*, 2014 IL 114271, ¶ 38 (discussing warranty of authority).[5] Custom Classic alleges

---

[5] A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits to determine what substantive law applies. *Gunn v. Continental Casualty Company*, 968 F.3d 802, 808 (7th Cir. 2020). Illinois courts apply Illinois law unless a difference in law affects the outcome of the case or the parties agree that forum law does not

Williams may have exceeded her actual authority. [1-1] at 9, ¶¶ 21–22.[6] Nevertheless, Custom Classic knew Williams worked as an agent on behalf of Axalta; had a longstanding business relationship with Williams for automobile paint products; and had worked with Williams on repairing Standox defects on other automobiles. [1-1] at 6–7, 11, ¶¶ 4, 10, 35. Thus, Custom Classic cannot show Williams lacked apparent authority for the promises she made about the Camaro. *See Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 34 (apparent authority exists when a reasonably prudent person, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess such authority) (citation and quotation omitted). Based on Williams's status as an apparent agent of Axalta, Custom Classic has no chance of success against her on its breach of contract claim.[7]

---

apply. *Id.* (citing *Bridgeview Health Care Center, Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14 and *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill.2d 325, 351 (2002)). Here, the parties assume Illinois law governs all of their claims. *See also Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019) ("choice of law issues may be waived or forfeited by declining to assert them in litigation.").

[6] Custom Classic may plead theories in the alternative. Fed. R. Civ. P. 8(d)(2). Axalta's factual concession—that Williams was acting within the scope of her employment—is for a later stage in the case.

[7] Williams's contract defense based on agency law is unique to her. Axalta cannot assert it. Consequently, the common defense doctrine does not apply. The common defense doctrine is an exception to the fraudulent joinder rule and bars federal jurisdiction. The district court must remand the case to state court if assessing the non-diverse defendant's chances of success forecloses all of the diverse defendants' claims, because such an analysis amounts to a judgment on the merits of the entire case. *See Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011) (citing cases where the common defense doctrine only applied when the non-diverse defendant's claim effectively decided the entire case against the diverse defendants); *see also Tile Unlimited, Inc. v. Blanke Corp.*, 788 F.Supp.2d 734, 742 (N.D.Ill. 2011) (reviewing appellate case law and concluding that the common defense doctrine does not apply when the plaintiff's claims against the non-diverse and diverse defendants are based, at least in part, on distinct theories of recovery).

Custom Classic's breach of warranty claim against Williams also fails based on Williams's alleged role. Under Illinois law, a party without a warranty assignment must be in privity of contract to enforce an express warranty alleging economic loss. *Collins Co., Ltd. v. Carboline Co.*, 125 Ill.2d 498, 511 (Ill. 1988) (privity requires a contractual relationship, like a valid assignment of the contract); *see also Collins Co., Ltd. v. Carboline Co.*, 837 F.2d 299 (7th Cir. 1988) (certifying question about the privity requirement for express warranties to the Illinois Supreme Court). Because Custom Classic alleges that Williams acted as its longstanding agent for Axalta paint products, [1-1] at 6–7, 11, ¶¶ 4, 10, 35, it is not reasonable to infer Williams personally assumed the obligations for the Standox lifetime warranty. Custom Classic cannot prevail on a breach of express warranty claim against Williams.[8]

To state a claim for fraudulent misrepresentation, a plaintiff must allege: 1) a false statement of material fact; 2) known or believed to be false by the person making it; 3) an intent to induce the plaintiff to act; 4) action by the plaintiff in justifiable reliance on the truth of the statement; and 5) damage to the plaintiff resulting from such reliance. *Newman v. Metropolitan Life Insurance Company*, 885 F.3d 992, 1003

---

[8] Generally, a district court exercising diversity jurisdiction must apply state substantive law and federal procedural law. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). However, under the theory of fraudulent joinder, a court must determine whether a plaintiff can establish a cause of action against the non-diverse defendant in *state* court. *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (emphasis added). The Seventh Circuit has not expressly stated whether a federal or state pleading standard applies when evaluating claims based on fraudulent joinder. *See* footnote 10, below. Illinois requires fact pleading, a more rigorous standard than federal notice pleading. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). Custom Classic's contract claims have no chance of success under either pleading standard.

(7th Cir. 2018) (citing *Doe v. Dilling*, 228 Ill.2d 324, 342–43 (2008)).[9] The false statement must concern a present or past fact, not future conduct or intent. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 570 (7th Cir. 2012) (promissory fraud is generally not actionable in Illinois) (citing Seventh Circuit and Illinois cases). However, an exception exists where the misrepresentations are part of a "scheme to defraud." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 168 (1989). While the distinction between promissory fraud and a scheme of promissory fraud is "elusive," a scheme occurs when the fraud is particularly egregious or embedded in a larger pattern of deception. *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) (interpreting Illinois cases).[10]

Williams's statements that Custom Classic would pay for the repair, [1-1] at 8, ¶ 14, was a promise to pay in the future and is not actionable under Illinois law. *See Zarins v. Bob Rohrman Auto Group*, 2013 IL App (1st) 113798-U, ¶ 63 (holding a warranty to pay for costs in the future amounted to non-actionable promissory fraud)

---

[9] Custom Classic can bring a common law tort claim under Illinois law against both Axalta and Williams. *See Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 765 (7th Cir. 2009) (whether the employer is held vicariously liable for the agent's conduct does not affect the agent's independent tort liability) (citing Illinois cases).

[10] In *In Re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, the district court cited both federal and Illinois standards for pleading fraud. 692 F.Supp.2d 1025, 1038 (S.D.Ill.2010), *aff'd Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011). Under the federal pleading standard, a complaint must allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Illinois law, fraud claims must be pleaded with sufficient specificity, particularity, and certainty, including identifying the who, what, and when of the fraud. *Bd. Of Educ. v. A C & S, Inc.*, 131 Ill.2d 428, 457 (1989). Because the standards are similar, there is no difference in the outcome of the fraudulent joinder analysis for Custom Classic's two fraud claims, regardless of whether the federal or state pleading standard applies.

(citing *Miller v. Sutliff*, 241 Ill. 521 (1909)). Even assuming Williams said the defendants "are paying" for the repairs, Custom Classic understood her statement as a promise to pay in the future, since Custom Classic did not expect payment until months later, after it submitted an invoice. [1-1] at 8, ¶ 17.[11] Custom Classic also fails to allege that Williams knew or believed the statements she made were false. Axalta's knowledge that Williams's statements may not have been authorized or true, [1-1] at 9, ¶¶ 21–22, does not permit a reasonable inference about Williams's state of mind. *See Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill.2d 179, 193 (1989) (the defendant must have knowingly made a false statement or a statement with reckless disregard for its truth or falsity). To the extent Custom Classic attempts to allege a "scheme to defraud," its one allegation that Williams made the same or similar promises in the past fails to establish a pattern of fraud (with particularity) because Custom Classic was compensated in those instances—no fraud occurred. [1-1] at 11, ¶ 35. Based on the allegations in the complaint, there is no reasonable possibility that Custom Classic could prevail against Williams on its claim of common law fraud.

---

[11] Axalta attributes only two statements to Williams—the phrases Custom Classic quoted Williams as saying. [1-1] at 8, ¶ 14. But Custom Classic is not required to allege verbatim quotations to state a claim against Williams. Custom Classic's complaint states Williams "explicitly represented that Axalta and/or Standox would compensate Custom Classic for repairing the defective Standox product." [1-1] at 8, ¶ 14. The complaint also permits a reasonable inference that Williams—not the customer—said Axalta "are paying to skim coat the whole body, prep, prime, prep, and paint." [1-1] at 8, ¶ 17. At this stage in the pleadings, all issues of law and fact must be resolved in Custom Classic's favor. *See Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013). Nevertheless, these allegations are promises of future payment and therefore not fraudulent.

11

Custom Classic's claim against Williams under the Illinois Consumer Fraud and Deceptive Business Practices Act fails for a different reason.[12] Under the Act, a plaintiff must show 1) a deceptive act or practice by the defendant; 2) the defendant's intent that the plaintiff rely on the deception; 3) the deception occurred in the course of trade or commerce; and 4) the consumer fraud proximately caused actual damage to the plaintiff. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180 (2005). "A breach of contractual promise, without more, is not actionable" under the Act. *Id.* at 169. The deceptive act or practice must involve "more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract." *Id.* (citations and quotations omitted). Here, Custom Classic alleges that the fraud was "making knowingly false and fraudulent representations to Custom Classic," specifically that the "[d]efendants would compensate Custom Classic for costs incurred" for the transportation and repair of the Camaro. [1-1] at 11–12, ¶¶ 34, 39. These allegations, at most, only establish that Williams "promised something and then failed to do it." *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (holding that allegations of false promises to restore vehicles and omissions about those promises were "nothing more than restatements of the claimed breach of contract, albeit using the language of fraud."). Because Custom Classic fails to allege a

---

[12] Custom Classic may sue Williams under the Act. *See Garcia v. Overland Bond & Inv. Co.*, 282 Ill.App.3d 486, 496 (1st Dist. 1996) ("Section 10(a) of the Consumer Fraud Act states that those damaged by violations of the Act may sue 'any person' who violates the Act. Section 1(c) of the Act includes corporations and the salesmen and employees who work for these corporations within the definition of the term 'person.'").

deceptive act or practice distinct from its breach of contract claims, Custom Classic has no chance of success against Williams under the Act.[13]

Based on Custom Classic's complaint at the time of removal, there is no possibility that Custom Classic can establish a cause of action against Williams. She was fraudulently joined.[14] Williams is disregarded for jurisdictional purposes and dismissed without prejudice.[15]

## B.    Motion to Transfer

Axalta argues that the forum selection clause in the 2014 exclusive requirements contract, [7-1] at 12, requires transferring this case to the Eastern District of Pennsylvania. I interpret the forum selection clause under "the law designated in the [contract's] choice of law clause." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775 (7th Cir. 2014); *see also Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007). The 2014 contract contained a Pennsylvania choice of law

---

[13] Because Custom Classic's claim fails as alleged, I do not reach the parties' other arguments under the Act.

[14] Because Williams was fraudulently joined, her consent was not required for removal. *See Northern Illinois Gas Co. v. Airco Indus. Gases, A Division of Airco, Inc.*, 676 F.2d 270, 272 (7th Cir. 1982) (nominal parties are disregarded for removal purposes and need not join in the petition).

[15] While fraudulent joinder can be grounds for dismissing a non-diverse defendant with prejudice, *see Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011), there is no bright-line rule about whether fraudulently joined defendants should be dismissed with or without prejudice. *Compare Henneberger v. Ticom Geomatics, Inc.*, 2016 WL 9663264, at *3 (S.D.Ill. 2016) (dismissing claims against fraudulently joined defendant without prejudice), *with Sagez v. Columbus McKinnon Corporation*, 2015 WL 13836836, at *4 (S.D.Ill. 2015) (dismissing claim against fraudulently joined defendant with prejudice). Ordinarily, courts in this circuit dismiss defendants without prejudice once before dismissing them with prejudice and here there is no reason to stray from that practice.

13

provision, [7-1] at 12, so Pennsylvania law governs the forum selection clause and whether it applies to this dispute.

Under Pennsylvania law, the scope of a forum selection clause is a matter of contract interpretation. *See Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*, 2000 PA Super 228, ¶¶ 11–13.[16] The 2014 contract between Axalta and Custom Classic said: "[e]ach party consents and submits to the exclusive jurisdiction of, and service of process by, the United States District Court for the Eastern District of Pennsylvania and the state courts of Pennsylvania." [7-1] at 12. Axalta argues this sentence means Custom Classic agreed to litigate any issue in Pennsylvania, regardless of whether it pertained to the contract. But the sentence is in a paragraph that repeatedly refers to the Master Agreement; the surrounding text suggests that the forum selection clause relates to disputes arising out of the contract. Axalta fails to cite a single Pennsylvania case that interprets a forum selection clause to apply to matters outside the scope of the agreement. *See Morgan Trailer Mfg. Co.*, 2000 PA Super 228, ¶¶ 11–13 (tort claims unrelated to the sale of products were not subject to the contract's forum selection clause); *Autochoice Unlimited, Inc. v. Avangard Auto Finance, Inc.*, 9 A.3d 1207, 1212 (Pa.Super. 2010) (the forum selection clause covered non-contract claims that arose in connection with the contractual relationship); *see also John*

---

[16] Under Pennsylvania's rules of contract interpretation, the court must ascertain the intent of the contracting parties. *Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 909 (2019) (citations omitted). Clear and unambiguous terms are the best reflection of the parties' intent. *Id.* If the terms are ambiguous, meaning they are susceptible to more than one reasonable interpretation, the court may resort to extrinsic evidence to ascertain their meaning. *Id.* at 910. The entire contract should be read as a whole, and the interpretation of one provision cannot annul another. *Id.* at 911.

*Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997) (disputes that "arise in relation to" a contract must have some "logical or causal connection" to the agreement). This dispute does not arise out of and is not in relation to the 2014 contract, since Custom Classic could litigate this repair dispute—which is rooted in a 2006 warranty that predates the master and incentive agreements— independent of its exclusive requirements relationship with Axalta. The forum selection clause in the 2014 contract does not apply to this lawsuit.[17]

Axalta's argument that Custom Classic should have raised its claims as counterclaims in the earlier litigation similarly fails. Under Federal Rule of Civil Procedure 13(a), a defendant must raise any claim that 1) exists at the time of pleading; 2) arises out of the same transaction or occurrence as the opposing party's claim; and 3) does not require parties over whom the court does not have jurisdiction. *Burlington Northern R.Co. v. Strong*, 907 F.2d 707, 710–11 (7th Cir. 1990). Otherwise

---

[17] Because I conclude the scope of the forum selection clause in the 2014 agreement does not cover this dispute, I do not reach the question of whether the clause is unenforceable. *See Autochoice Unlimited, Inc. v. Avangard Auto Finance, Inc.*, 9 A.3d 1207, 1215 (Pa.Super. 2010) (a valid forum selection clause may be deemed unenforceable if the clause was induced by fraud or overreaching; if the clause is so unfair or inconvenient that it will deprive a party of an opportunity to be heard; or if the clause violates public policy). Axalta's arguments about an implied-in-fact contract defense are meritless since Custom Classic only alleges an express contract between Axalta and Custom Classic, through the oral representations made by Axalta representatives and the express warranty. *See Bricklayers of Western Pennsylvania Combined Funds, Inc. v. Scott's Development Co.*, 90 A.3d 682, 695 (2014) (an implied-in-fact contract arises when the intention of the parties is not expressed, but an agreement in fact creating an obligation is implied or presumed from their acts). Because there is no implied-in-fact contract, Axalta's argument that this dispute relates to the 2014 contract based on an implied-in-fact defense fails. Other than its reliance on the forum selection clause, Axalta offers no argument that the Eastern District of Pennsylvania is more convenient for the parties or witnesses or that the interests of justice weigh toward transfer. Custom Classic is here, Williams is here, and Axalta is capable of litigating in this district. Transfer is not appropriate.

the claim is barred. *Id.* at 710.[18] The rule encourages the simultaneous and final resolution of all claims that arise from a common factual background. *Id.* (citation and quotation omitted). To determine whether a claim arises out of the same transaction or occurrence, the court must consider the totality of the claims, the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds. *Id.* at 711. Axalta's earlier lawsuit concerned a different set of facts: Custom Classic allegedly breached the 2014 exclusive requirements contract and owed a termination fee and damages. [7-1] at 2–8. Custom Classic's lawsuit here concerns a Standox product used in 2006 and the subsequent paint repairs required years later. [1-1] at 6–13. Axalta fails to show what provisions in the 2014 agreement apply to this lawsuit about an old, defective product. The claims from each lawsuit are not logically related. Custom Classic's claims are not barred under the compulsory counterclaim rule.[19]

Axalta's motion to transfer is denied.

## C.   Motion to Dismiss

Whether Custom Classic's remaining counts against Axalta survive depends on whether they state a claim under Federal Rule of Civil Procedure 12(b)(6). To state a breach of contract claim under Illinois law, a plaintiff must allege a valid and enforceable contract, performance by the plaintiff, a breach by the defendant, and the

---

[18] "The 'compulsion' of a compulsory counterclaim is a procedural implementation of the doctrine of res judicata." *Greene v. U.S. Dept. of Educ.*, 770 F.3d 667, 670 (7th Cir. 2014).

[19] Because the claims do not arise out of the same transaction or occurrence, I do not reach the issue of joining Williams as a third party for purposes of a compulsory counterclaim or whether Axalta's compulsory counterclaim argument is procedurally defective.

16

Case: 1:20-cv-05079 Document #: 21 Filed: 12/11/20 Page 17 of 20 PageID #:201

resultant injury to the plaintiff. *American Remodal & Construction, Inc. v. Fernandez*, 2020 IL App (1st) 192026-U, ¶ 36 (citing *Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 2016 IL App (2d) 151053, ¶ 14). A valid and enforceable contract requires an offer, an acceptance, and consideration. *Id.* ¶ 39 (citing *Talbert v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 380 (1994)). There must be a "meeting of the minds or mutual assent as to the terms of the contract." *Id.* (citing *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 313 (1987)). The "conduct of the contracting parties indicates an agreement to the terms of the alleged contract." *Id.* (citation and quotation omitted). Here, Axalta representatives expressly stated that Axalta would compensate Custom Classic for the transportation and repair of the Camaro. [1-1] at 7–8, ¶¶ 13–17. Custom Classic agreed and repaired the vehicle. [1-1] at 8, ¶¶ 15–16. The complaint alleges that Axalta, through Williams, established a relationship with Custom Classic and it is reasonable to infer at this stage that Axalta's payment was in exchange for maintaining a positive relationship with Custom Classic. *See Doyle v. Holy Cross Hosp.*, 186 Ill.2d 104, 112 (1999) ("Consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them."). Axalta's actions were consistent with this agreement—Axalta representatives inspected the vehicle and coordinated the repair process with Custom Classic multiple times, including a visit to Custom Classic's office. [1-1] at 6–8, ¶¶ 10–17. Custom Classic sufficiently alleges a "meeting of the minds" and a valid and enforceable contract based on Axalta's oral representations.

To state a breach of express warranty action under the Illinois Uniform Commercial Code, "the plaintiff must show a breach of an affirmation of fact or promise that was made a part of the basis of the bargain. Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties." *Hasek v. DaimlerChrysler Corp.*, 319 Ill.App.3d 780, 788 (1st Dist. 2001) (citations omitted). Custom Classic alleges a lifetime warranty between Standox and Custom Classic's customer but does not explain how this contract involves the rights and obligations of Custom Classic and Axalta. [1-1] at 6–7, ¶ 8; [1-1] at 14–15. In the original complaint, Custom Classic does not allege Axalta is the successor-in-interest to the Standox warranty or that Custom Classic has a valid assignment of its customer's rights under the express warranty. *See Collins Co., Ltd.*, 125 Ill.2d at 507 (to sue for economic loss under an express warranty, the plaintiff must be the warrantee or have a valid assignment to be in privity with the warrantor). Custom Classic fails to sufficiently plead a breach of warranty claim against Axalta.

Custom Classic's two remaining fraud claims against Axalta suffer from the same defects as its fraud claims against Williams. The statements Axalta made amount to a promise about future conduct, and promissory fraud is not actionable in Illinois. *See Wigod,* 673 F.3d at 570. Standing alone, Axalta's after-the-fact admissions that Williams's statements may have been unauthorized or untrue, [1-1] at 9, ¶¶ 21–22, do not permit a reasonable inference that Axalta knowingly or recklessly made false statements about compensating Custom Classic for the repair.

Finally, the fraud Custom Classic alleges under the Illinois Consumer Fraud Act is not distinct from the conduct underlying its breach of contract claim and therefore does not constitute a "deceptive act or practice." *Avery*, 216 Ill.2d at 169.[20] Custom Classic fails to state a fraud claim under common law or the Act. All of Custom Classic's claims are dismissed except the contract claim. The dismissal is without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) ("a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [its] complaint before the entire action is dismissed.").

---

[20] While I do not reach the parties' other arguments under the Illinois Consumer Fraud Act, if Custom Classic amends its complaint, it should sufficiently plead how it qualifies as a consumer or meets the consumer-nexus test under the Act.

## V. Conclusion

Custom Classic's motion to remand, [15], is denied and Williams is dismissed without prejudice. Axalta's motion to transfer, [5], is denied. Axalta's motion to dismiss, [5], is granted in part, denied in part. Standox North America, Inc. is dismissed with prejudice and the Clerk shall terminate it as a party to the case. Custom Classic has leave to amend its complaint by January 4, 2021. If an amended complaint is not filed, the dismissal of Counts II through IV will convert to a dismissal with prejudice, and the case will proceed on Count I. Axalta's answer is due by January 25, 2021, and the parties shall file a status report with a proposed case schedule on January 25, 2021.

ENTER:

Manish S. Shah
United States District Judge

Date: December 11, 2020